UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| RICK COBURN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) Case No. 3:09-CV-534 JD |
| v. | ) |
| | ) |
| TERRY MARTIN, *et al.*, | ) |
| | ) |
| Defendants. | ) |

OPINION AND ORDER

This matter is before the court on cross motions for summary judgment. Rick Coburn, a *pro se* prisoner, is proceeding on a denial of medical treatment claim against Sheriff Terry Martin and Dr. Thomas Pechin. In his motion, Coburn explains his claim.[1]

> On or about August 8, 2009 I Ricky Coburn ask the staff of Terry Martin for pain relievers for pain in my lower back. I was denied and told by the staff of Terry Martin that I needed to see a doctor, one Dr. Thomas Pechin, in order to receive pain relievers. Over the counter pain relievers. Several hours one Robert Valasqeuz ask the staff of Terry Martin for pain relievers for pain in his leg. He was given pain relievers, towel, and ice pack to wrap around his leg. I was a little upset about this. On August 9, 2009 I Ricky Coburn again ask for pain relievers for pain in my lower back where I had surgery before and again I was denied and told I needed to see the doctor to be put on over the counter pain relievers. Again Robert Valasquez ask the staff of Terry Martin for pain relievers for pain in his leg. Again he was given pain medication, towel, and ice pack to wrap around his leg. To me, I feel my civil rights were violated. I feel I was denied medical treatment, and I feel I racially discriminated against. These are the reasons I am suing Terry Martin and Dr. Pechin. *Only on these two occasion was I denied medical treatment and discriminated against and asking for compensation for.* If someone is in severe pain, it is against their constitutional rights to deny them medical treatment. Then at the same time give it to someone else.

ECF 86, emphasis added.

---

[1] In this motion, Coburn says that the events occurred on August 8 and 9. This contradicts his deposition in which he states that they occurred on August 9 and 10. Because the legal analysis is the same regardless of the dates, the court assumes that this is a scrivener's error.

Pursuant to FEDERAL RULE OF CIVIL PROCEDURE 56(a), summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." "In other words, the record must reveal that no reasonable jury could find for the non-moving party." *Dempsey v. Atchison, Topeka, & Santa Fe Ry. Co.*, 16 F.3d 832, 836 (7th Cir.1994) (citations and quotation marks omitted). The party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying" the evidence which "demonstrate[s] the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "Substantive law determines which facts are material; that is, which facts might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

A party asserting that a fact cannot be or is genuinely disputed must support the assertion by "citing to particular parts of materials in the record" or show "that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." FED.R.CIV.P. 56(c)(1). To establish a genuine issue of fact, the nonmoving party must come forward with specific facts showing that there is a genuine issue for trial, not "simply show that there is some metaphysical doubt as to the material facts." *First Nat'l Bank of Cicero v. Lewco Secs. Corp.*, 860 F.2d 1407, 1411 (7th Cir. 1988) (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)). If the nonmoving party fails to establish the existence of an essential element on which it bears the burden of proof at trial, summary judgment is proper. *Massey v. Johnson*, 457 F.3d 711, 716 (7th Cir. 2006) (holding that a failure to prove one essential element necessarily renders all other facts immaterial).

In ruling on a motion for summary judgment, a court must view all facts in the light most favorable to the nonmoving party. *Anderson*, 477 U.S. at 255; *Popovits v. Circuit City Stores, Inc.*, 185 F.3d 726, 731 (7th Cir. 1999). A court must avoid the temptation to "make credibility determinations, weigh the evidence, or decide which inferences to draw from the facts; these are jobs for a factfinder." *Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003). Summary judgment is not a substitute for a trial on the merits or a vehicle for resolving factual disputes. *Waldridge v. Am. Hoechst Corp.*, 24 F.3d 918, 920 (7th Cir. 1994). Instead, the court's sole task in ruling on a motion for summary judgment is "to decide, based on the evidence of record, whether there is any material dispute of fact that requires a trial." *Payne*, 337 F.3d at 770. If a reasonable factfinder could find in favor of the nonmoving party, summary judgment may not be granted. *Id.*

Here, Coburn's claims arise while he was a pre-trial detainee being held at the LaGrange County Jail. "Although the Eighth Amendment applies only to convicted persons, pretrial detainees . . . are entitled to the same basic protections under the Fourteenth Amendment's due process clause. Accordingly, [courts] apply the same legal standards to deliberate indifference claims brought under either the Eighth or Fourteenth Amendment." *Minix v. Canarecci*, 597 F.3d 824, 831 (7th Cir. 2010). In medical cases, the Eighth Amendment test is expressed in terms of whether the defendant was deliberately indifferent to the plaintiff''s serious medical needs. *Gutierrez v. Peters*, 111 F.3d 1364, 1369 (7th Cir. 1997).

In their motions for summary judgment, the defendants argue that Coburn cannot produce evidence that they were deliberately indifferent to his medical needs. "A plaintiff bringing a civil rights action must prove that the defendant personally participated in or caused the unconstitutional actions." *Grieveson v. Anderson*, 538 F.3d 763, 776 (7th Cir. 2008) (citation omitted). Because

Coburn has not submitted any evidence demonstrating that either defendant was personally involved with denying him medical care, summary judgment will be granted in their favor on those claims.

Furthermore, though Coburn did not name any of the staff who were personally involved, even if he had done so, it does not appear that he could have prevailed. Based on his description of events, the staff did not ignore his requests for medical treatment, rather they referred him to the doctor.

> If a prisoner is under the care of medical experts, a non-medical prison official will generally be justified in believing that the prisoner is in capable hands. This follows naturally from the division of labor within a prison. Inmate health and safety is promoted by dividing responsibility for various aspects of inmate life among guards, administrators, physicians, and so on. Holding a non-medical prison official liable in a case where a prisoner was under a physician's care would strain this division of labor.

*Greeno v. Daley*, 414 F.3d 645, 656 (7th Cir. 2005) (ellipsis omitted) quoting *Spruill v. Gillis*, 372 F.3d 218, 236 (3rd Cir. 2004).

Though certainly they would have been required to do more if Coburn had been experiencing a medical emergency, his described chronic back pain cannot reasonably be interpreted as a medical emergency. This point is driven home by Coburn himself. In his deposition he makes it clear that he requested pain medication shortly after being booked on August 9, 2009, and was informed that he would need to see a doctor to receive medication. Nevertheless, Coburn did not submit such a request until August 24, 2009. ECF 64-1 at 7. Because he wanted more than two weeks to turn in a healthcare request, it is not reasonable to infer that his chronic back pain was an emergency. Nor is there any indication that anyone at the jail caused this delay. "Under the Eighth Amendment, [a prisoner] is not entitled to demand specific care. [H]e is not entitled to the best care possible." *Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir.1997).Thus the constitution does not require that he

4

receive pain medication on demand nor before he had seen the jail doctor. "[S]ociety does not expect that prisoners will have unqualified access to health care . . .." *Hudson v. McMillian*, 503 U.S. 1, 9 (1992). As Coburn explained in his deposition, he did see the doctor after he submitted a healthcare request, and he did receive pain medication after the doctor prescribed it. ECF 64-1 at 8.

Coburn also claims he was discriminated against after being booked at the jail. Though this court has already rejected Coburn's equal protection claim in the screening order (ECF 13), because he raises it in his summary judgment motion, the court will address it again. In his deposition Coburn explained the events.

> Q: On the night that he knocked the first night, August 9, 2009, when he knocked on the door for pain medication, who came to the door?
> A I'm not sure who it was. My memory is kind of shot. I know one was a female on night, and then another point, one was a male guard. I can't give you exact names because I don't remember.
> Q: On August 9th, the first night that it happened, do you remember when Mr. Velasquez knocked on the door, did a white person come to the door?
> A: Yes, sir.
> Q: On August 10, 2009, when you knocked – when Mr. Velasquez knocked on the door and got pain medication, was it a white person that came to the door?
> A: Yes, sir.
> Q: August 9th, the first night, August 9, 2009, did the white person that came to the door say anything relating to the race of Mr. Velasquez?
> A: No, sir.
> Q: Did the white person say anything about your race?
> A: No, sir.
> Q: Did the white person say anything about anybody else's race –
> A: No, sir.
> Q: –that was in the block with you?
> A: No, sir.
> Q: On August 10th when the white person came to the door after Mr. Velasquez knocked on it, did that white person say anything about Mr. Velasquez's race?
> A: No, sir.
> Q: Did that white person say anything about your race?
> A: No, sir.
> Q: Have you ever heard a staff member make a comment that Mr. Velasquez should be treated differently because he is Hispanic?
> A: No, sir.

> Q: Have you ever heard a white staff person from this jail make a comment that you should be treated differently because you're white?
> A: No, sir.
> Q: Have you ever heard anybody employed by the Sheriff's Department make any statement about Mr. Velasquez's race?
> A: No, sir.
> Q: Have you ever heard anybody from the Sheriff's Department make any statements about your race?
> A: No, sir.
> Q: Your whole basis for your racial discrimination claim then, if I understand it, is that he was Hispanic, he knocked after med pass, he got medicine, you were white, you asked during med pass and you didn't get medicine, is that it?
> A: Yes, sir.

ECF 64-1 at 14.

In a § 1983 discrimination case, defendants must have "acted or failed to act with a nefarious discriminatory purpose, and discriminated against [the plaintiff] because of her membership in a definable class" *McPhaul v. Board of Com'rs of Madison County*, 226 F.3d 558, 564 (7th Cir. 2000) (citations, quotation marks and brackets omitted). Here, Coburn has presented no such evidence. Indeed, there is no basis for inferring that a causal link exists between the discrepancy in race and a discrepancy in the medication distribution. Coburn had just been booked into the jail and had not yet seen the doctor, therefore he did not get the medication he requested. Moreover, even if discrimination had occurred, because the named defendants were not present on either occasion, neither of them could be held liable because "supervisory liability" does not exist for § 1983 claims. *Ashcroft v. Iqbal*, 556 U.S. ___, ___; 129 S. Ct. 1937, 1949; 173 L. Ed. 2d 868, 884 (2009).

In addition to his motion for summary judgment, Coburn has filed a motion to enter evidence. ECF 78. As the defendants have correctly noted, this is a offer to compromise and therefore not admissible to prove liability under FEDERAL RULE OF EVIDENCE 408(a). The motion is therefore denied.

Defendant Thomas Pechin has also filed a motion to strike a letter to the court submitted by Coburn. The letter merely states the amount he is demanding and discusses the claims he presented in his complaint. Though the letter mentions claims that were dismissed in screening, that is not a valid basis for striking such a letter. Therefore the motion will be denied.

For the foregoing reasons, the court:

(1) **GRANTS** Thomas Pechin's motion for summary judgment (ECF 53),

(2) **GRANTS** Terry Martin's motion for summary judgment (ECF 64),

(3) **DENIES** Rick Coburn's motion for summary judgment (ECF 86),

(4) **DENIES** Rick Coburn's motion to enter evidence (ECF 78), and

(5) **DENIES** Thomas Pechin's motion to strike (ECF 56).

SO ORDERED.

SO ORDERED.

ENTERED:  July 29, 2011

      /s/ JON E. DEGUILIO
Judge
United States District Court